J-S45022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WISLY OXCENA | : | |
| | : | |
| Appellant | : | No. 781 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 21, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003749-2019

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY MURRAY, J.:                **FILED FEBRUARY 06, 2026**

Wisly Oxcena (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence entered following his conviction by a jury of aggravated assault and recklessly endangering another person (REAP).[1]  Appellant challenges the admissibility at trial of a photograph of the burn victim.[2]  After careful consideration, we affirm.

The trial court described the history of this case as follows:

[J.B., (the victim)], twenty years old at the time of the incident,[3] testified that she began dating [Appellant] at age fifteen.  N.T., 8/12-15/24, at 131.  At age eighteen, [the victim] began living

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2705.

[2] The photograph was admitted as part of Commonwealth Exhibit 5.

[3] Appellant is sixteen years older than the victim.

with [Appellant] at his apartment. *Id.* at 132. [The victim] testified that she and [Appellant] fought often, and that he would slap her, punch her, and put her in headlocks. *Id.* at 136. … [The victim] never observed [Appellant] experience any mental issues such as hallucinating or hearing things. *Id.* at 140. She knew him to act irrationally when he used cigarettes dipped in embalming fluid. *Id.* at 141.

Trial Court Opinion, 8/26/25, at 2 (footnote added; citations in original, but reformatted).

On June 5, 2019,

[Appellant] woke [the victim] early in the morning and told her to get her things and leave, something he had done on prior occasions. N.T., 8/12-15/24, at 142-43. As [Appellant] threw [the victim's] clothes on the floor, she attempted to put them back into the drawers, which angered [Appellant]. *Id.* at 143. [The victim] called her cousin, Robert [B. (Robert).] *Id.* at 144-45. Before her cousin arrived, [Appellant] hit [the victim] in the face repeatedly as she tried to retreat. *Id.* [The victim] did not know why [Appellant] was angry with her. *Id.* at 147. [The victim] left, intending to return when [Appellant's] anger subsided. *Id.* at 147. Robert [] took [the victim] to her grandmother's house. *Id.* at 149.

Robert [] testified that on June 5, 2019, he received a call from [the victim] in which she said that she was in trouble and was trying to gather her things to leave the residence where she was staying with [Appellant], that he would not allow her to leave, and that she needed help. *Id.* at 61-64. When [Robert] arrived, [the victim] let him into the residence. *Id.* at 64. [The victim] packed a black trash bag and a duffel bag as [Appellant] stood in the back of the bedroom. *Id.* [Appellant] appeared angry and upset, but did not exhibit odd, unusual or bizarre behavior. *Id.* at 67, 70. [The victim] left with [Robert]. *Id.* at 70.

Trial Court Opinion, 8/26/25, at 2-3 (citations in original, but reformatted).

Later that same day, the victim attended a cookout at a friend's house, after which she returned to Appellant's apartment. N.T., 8/12-15/24, at 149. An argument ensued, during which

> [the victim] told [Appellant] that the next day, she would be [moving] out of the house. N.T., 8/12-15/24, at 151. [The victim] took off her shirt and went to the bedroom to lay down. *Id.* Wearing a bra and shorts, she lay on her stomach over the covers, with her arms extended, one palm over the other, and her head turned to one side. *Id.* at 155-56. Having followed her into the bedroom, [Appellant] then left. *Id.* at 156.
>
> [The victim] heard [Appellant] return to the bedroom. *Id.* She next recalled that [Appellant] stated[,] "So you wanna be light-skinned, right?" *Id.* [Appellant then] poured boiling water on [the victim's] face, back and arms. *Id.* at 157. [The victim] felt as though she were going into shock and that her skin was melting. *Id.* As [the victim] screamed and ran around the apartment, [Appellant] told her to get into a cold shower, which caused her more pain. *Id.* at 158. [The victim] returned to the bedroom, where [Appellant] placed her in front of an air conditioner and tried to make her drink beer. *Id.* [The victim] eventually fell asleep. *Id.* at 159. [The victim] believed that [Appellant] tried to get her to recover quickly so that she would not go to the hospital. *Id.* at 161. When [the victim] awoke, she begged [Appellant] for water. *Id.* She could not move her arms. *Id.* [Appellant] gave her a knife and said, "Just stab me." *Id.*
>
> The next morning, when she summoned the energy to get out of bed, [the victim] told [Appellant] to take her to the hospital, or that she would walk there herself. *Id.* at 160. She wrapped a towel around her face. *Id.* [Appellant] drove [the victim] to the hospital, dropped her off in front of the hospital, then drove away. *Id.* ….

Trial Court Opinion, 8/26/25, at 3-4 (citations in original, but reformatted).

Although the victim told hospital personnel that she burned herself while trying to clean her porch, the emergency room physician stated the victim's wounds were not consistent with that explanation. N.T., 8/12-15/24, at 48-

- 3 -

49. Because of the severity of the burns, the victim was transported to the Lehigh Valley Hospital Burn Center. *Id.* at 48, 51, 267. Dr. Daniel Lozano (Dr. Lozano), a burn surgeon, testified at trial that the victim suffered burns over 23% of her body, and that the wounds were two days old at the time of the victim's hospital admission. *Id.* at 268-70. Dr. Lozano testified the burns were consistent with a person lying on their stomach, with the arms extended and the head to the left side. *Id.* at 287-88. Dr. Lozano opined that the victim sustained a serious bodily injury placing her at a high risk of death. *Id.* at 291.

At 4:23 p.m., on June 8, 2019, Harrisburg Police Officer Harry Burger (Officer Burger) received a call indicating that the victim had been badly burned by Appellant. N.T., 8/12-15/24, at 76. Upon arriving at Appellant's residence, Appellant informed Officer Burger that the victim's burns were caused by "an accident." *Id.* at 78. According to Appellant, he had accidentally pushed the victim into the stove, at which time a pot of boiling water fell over and onto the victim's back. *Id.* at 81. Appellant later claimed not to be in his "right state of mind." *Id.* at 88.

Appellant subsequently was arrested and charged with the above-described crimes. The matter proceeded to a jury trial on August 12-15, 2024.

The jury convicted Appellant of the above-described charges. On October 21, 2024, the trial court sentenced Appellant to 9-20 years in prison.[4]

Appellant timely filed a notice of appeal. In addition, Appellant filed a court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. On February 24, 2024, this Court dismissed Appellant's appeal based on his failure to file a Superior Court Docketing Statement. Order, 2/24/25.

Appellant timely filed a petition for leave to appeal, *nunc pro tunc*, which the court considered to be a petition timely filed pursuant to the Post Conviction Relief Act ("PCRA").[5] The Commonwealth filed a response indicating it would not object to the reinstatement of Appellant's direct-appeal rights. Commonwealth Response, 6/10/25, ¶ 2. On June 11, 2025, the PCRA court granted relief and reinstated Appellant's direct-appeal rights, *nunc pro tunc*. PCRA Court Order, 6/11/25. On June 16, 2025, Appellant filed a notice of appeal. The trial court did not order Appellant to file a new Pa.R.A.P. 1925(b) concise statement, but filed an opinion on August 26, 2025.

Appellant presents the following issue for our review:

> Whether the trial [c]ourt erred when it denied [Appellant's] motion to preclude a photograph of the [victim's] injuries and reasoned that the photograph was neither inflammatory, repetitious, nor cumulative in nature.

---

[4] Appellant's conviction of REAP merged at sentencing.

[5] 42 Pa.C.S.A. §§ 9541-9546.

Appellant's Brief at 4.

Appellant argues that the trial court improperly permitted the Commonwealth to introduce an inflammatory photograph depicting the victim's burns (Commonwealth Exhibit 5). *Id.* at 12. Appellant claims the photograph, which showed "a mass discoloration of most of [the victim's] upper body, served only to inflame the jurors when the case did not require [its] display." *Id.* According to Appellant, the issue at trial was not "what [Appellant] did; rather the question was whether [Appellant] was legally sane at the time of the burning." *Id.*

Appellant challenges the trial court's determination that the photograph was not inflammatory. *Id.* at 17. Appellant argues,

> [t]he [c]ourt's determination that the picture was not "gruesome" ignores the clear distortion of the skin [] compared to the natural pigmentation of the victim…. [T]he distortion of flesh renders the photograph gruesome….

*Id.* Appellant argues that the trial court improperly focused on the photograph's evidentiary value, because the Commonwealth had already provided ample evidence of the extent of the victim's injuries and Appellant's intent. *Id.* at 17-18. Citing ***Commonwealth v. Legares***, 709 A.2d 922 (Pa. Super. 1988), Appellant argues that

> the photographs were unnecessary to the trial because it was undisputed what [Appellant] did. Rather, the issue was his sanity at the time of his actions. By allowing the in-color photograph, the jurors were likely to be inflamed and not consider [Appellant's] actions fairly and impartially….

*Id.* at 18.

The Commonwealth disagrees, arguing that even if the photograph was inflammatory,

> the photo aids the Commonwealth in its burden of proving Appellant's intentional, knowing, or reckless causation of serious bodily injury with extreme indifference to human life, as required by 18 Pa.C.S.[A.] § 2702(a)(1). Admission of a photograph depicting the condition of a victim's body provides evidence of intent. [**Commonwealth v.**] **Watkins**, 108 A.3d [692,] 724 [(Pa. 2014)].

Commonwealth's Brief at 14. The Commonwealth further points out Appellant's claim to law enforcement that the victim's injuries were caused by an accident. **Id.** at 14-15. The Commonwealth asserts the photograph disproved Appellant's claim of an accident, as the nature, severity, location, scope, and percentage of body covered by burns evidence intentional, malicious conduct by Appellant. **Id.** at 15.

In its opinion, the trial court concluded that Appellant waived any challenge to the photograph by "failing to adequately identify the disputed photograph on the record and include it in the record for review." Trial Court Opinion, 8/26/25, at 7. The trial court acknowledges that, while it concluded *at trial* that Appellant had preserved his challenge to the photograph, it now concludes that the record does not identify the disputed photograph. **Id.** at 10. According to the trial court, Appellant's failure to properly identify the photograph, and to include it in the certified record, requires waiver of the claim. **Id.** Even if not waived, the trial court would conclude it properly exercised its discretion in admitting the photograph. **Id.** at 11.

"It is well settled that the admissibility of evidence is a matter within the discretion of the trial court, and will be reversed only upon an abuse of that discretion." *Commonwealth v. Knight*, 241 A.3d 620, 642 (Pa. 2020). "[T]he appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) (citation omitted). Consequently, our standard of review is narrow:

> [A] trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. Where the evidentiary question involves a discretionary ruling, our scope of review is plenary.

*Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa. Super. 2025) (citation omitted).

"The threshold inquiry with admission of evidence is whether the evidence is relevant." *Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted). "Evidence is relevant if ... it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Pa.R.E. 401(a); *see also Commonwealth v. Minerd*, 753 A.2d 225, 230 (Pa. 2000) (recognizing that relevant evidence "logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." (citation and quotation marks omitted)).

"Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice." *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa. Super. 2012) (*en banc*); *see also* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of ... unfair prejudice."). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case." *Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012). However, the court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand. *Id.*

> The admissibility of photographs
>
> falls within the discretion of the trial court and only an abuse of that discretion will constitute reversible error. The test for determining whether photographs are admissible involves a two-step analysis. First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury.

*Commonwealth v. Lowry*, 55 A.3d 743, 753 (Pa. Super. 2012) (citations and quotation marks omitted). "This Court has interpreted inflammatory to mean the photo is so gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa. Super. 2011) (*en banc*).

Instantly, the Commonwealth charged Appellant with aggravated assault.[6] A person is guilty of aggravated assault if he:

> attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

To obtain a conviction for aggravated assault,

> when the victim sustained serious bodily injury, the Commonwealth must establish that the offender acted intentionally, knowingly, or with a high degree of recklessness that included an element of deliberation or conscious disregard of danger. At a minimum, the Commonwealth must prove that the offender acted with malice, consciously disregarding an unjustified and extremely high risk that his actions might cause death or serious bodily harm. In other words, a defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

*Commonwealth v. Faulk*, 928 A.2d 1061, 1070 (Pa. Super. 2007). **It is the Commonwealth's burden to prove every element of the offense**

---

[6] The Commonwealth also charged Appellant with REAP. "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

**beyond a reasonable doubt.** *Commonwealth v. Mitchell*, 902 A.2d 430, 444-45 (Pa. 2006).

In his August 24, 2024, motion *in limine*, Appellant sought to preclude the introduction of "inflammatory images of injuries" sustained by the victim. Motion *in Limine*, 8/24/24, at 5. Specifically, Appellant sought

> to preclude [the photograph] which the alleged victim sent to the District Attorney. Specifically, the image appears to be a screen shot of a video which was embedded in a text message between the alleged victim and another person, who is alleged by the victim to have been [Appellant]. The image in question is clearly inflammatory as it apparently depicts a nearly-naked alleged victim during her stay in the hospital, with starkly visible injuries. Any evidentiary value as to the nature of the alleged victim's injuries could be established just as easily with a different photograph, one which poses far less risk that it will irreparably prejudice the jury and directly impact the fairness of the trial.

*Id.* at 5-6 (paragraph designations and breaks omitted). Appellant further challenged the photograph as "not taken as part of an official legal or medical procedure or investigation[.]" *Id.* at 6. Appellant argued that the

> unofficial nature of the photograph and the anonymity of its origination unduly hampers [Appellant's] right to assess the accuracy of the image (*e.g.*, if any special effects, filters, *etc.*, were used) and violates the Best Evidence Rule.[7]

*Id.* (footnoted added). Appellant's motion did not concede the existence of serious bodily injuries, or that he caused the victim's injuries.

---

[7] *See* Pa.R.E. 1002 (providing that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise.").

Although the trial court's opinion stated that Appellant failed to identify the photograph at issue in his motion *in limine*, our review discloses that the trial court had no difficulty identifying the photograph at issue when, immediately prior to the victim's testimony, the court ruled on Appellant's motion:

[THE TRIAL JUDGE:] So I did have occasion to review all the photographs.

… [T]he picture at issue, I don't find it gruesome. It is certainly graphic. But I also think it shows the magnitude better than any of the other pictures, which is relevant to both what the treating physician said, as opposed to what the victim allegedly told her at the time, as well as the two conflicting versions from [Appellant]. That picture seems to … trump the other descriptions because of the sheer area that's covered by the burning, both from [the victim's] head, face, as well as upper torso.

**So, you've preserved the issue.** It's an exception on the record, but th[e] [c]ourt finds that the probative value clearly outweighs what might otherwise be deemed inflammatory, and it is in a context of a series of texts that also make it significantly relevant to the dialog between the victim and [Appellant].

N.T., 8/12-15/24, at 104-05 (emphasis added). Thus, it appears the trial court was able to identify the photograph challenged in Appellant's motion *in limine* at the time it made its ruling. **See id.** Upon review of the record, we conclude Appellant sufficiently identified the photograph at issue in his motion *in limine*, at trial, and on appeal.[8]

_____

[8] In addition, we observe that on September 29, 2025, Appellant and the Commonwealth jointly stipulated to the inclusion of Commonwealth Exhibit 5 (which included the challenged photograph) as part of the certified record

*(Footnote Continued Next Page)*

Next, we consider whether the trial court abused its discretion by admitting the photograph at trial. We note that at trial, Appellant asserted the defense of insanity. "[C]riminal defendants may be presumed sane for purposes of determining their criminal liability." *Commonwealth v. Fortune*, 302 A.3d 780, 783 (Pa. Super. 2023) (citation omitted). Thus, while the Commonwealth has the burden to prove each element of crime as defined by statute, it is a defendant who has the burden of proving an insanity defense. *Id.* at 783.

> As a result, a defendant has the burden of proving an insanity defense by a preponderance of the evidence. 18 Pa.C.S.A. § 315(a) ("[t]he mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense").
>
> Section 315 of the Crimes Code contains the following definition of legal insanity:
>
> > **(b) Definition.**—For purposes of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.
>
> 18 Pa.C.S.A. § 315[(b)]….

---

transmitted to this Court. Joint Stipulation, 8/29/25. Nevertheless, the trial court failed to transmit Commonwealth Exhibit 5 with the certified record. Upon inquiry by this Court, however, the certified record has been supplemented to include the disputed photograph.

*Id.* at 783-84. Thus, Appellant's assertion of an insanity defense did not obviate the Commonwealth's burden to establish the elements of aggravated assault and REAP beyond a reasonable doubt. *See Fortune*, 302 A.3d at 783. Prior to the victim's testimony, the trial court ruled that the probative value of the photograph outweighed "what might otherwise be inflammatory[.]" N.T., 8/12-15/24, at 105.

As observed by the trial court, the photograph, while "graphic," was not "gruesome." *Id.* at 104. Nevertheless, the trial court admitted the photograph as better showing the magnitude of the victim's injuries, and as relevant to Appellant's competing versions of the incident offered to authorities. *Id.* at 104-05.

Our review discloses that at trial, the Commonwealth introduced Exhibit 5, which is comprised of a series of Facebook messages between the victim and Appellant, including the disputed screen-shot photograph of the victim's injuries. N.T., 8/12-15/24, at 167. The messages show that they were exchanged beginning at 4:00 a.m. on June 11, 2019. *Id.* at 168. The victim, who had initially blamed herself for her injuries, testified that she sent text messages to Appellant upon waking from a coma:

> [O]nce I woke up from the coma, … I was so angry. I felt betrayed. So I believe I texted [Appellant] and said something like, I hope you're enjoying this freedom that you have. And he texted back, he said, Yes, I have been; how are you.
>
> … I think [Appellant] misinterpreted what I was trying to say. But when I text[ed] him that[,] it wasn't like, I hope you're enjoying yourself, it was like, I hope you're enjoying your freedom, because

I can't keep trying to protect you. Once that happened, I wasn't gonna be able to protect him from that.

*Id.* at 164-65.

The victim explained that a friend who had stayed with her at the burn center, upon the victim's request, took a video of the victim's injuries. *Id.* at 166. According to the victim, she requested the video because her room had no mirrors, and she was unable to see herself. *Id.* The victim then text messaged Appellant, indicating, in part, "You can [r]ot in jail and suffer for all I care; you tried to kill me; good-bye." *Id.* at 171. Appellant responded, "Why would I do that[?]" *Id.* According to the victim, she responded, "Bye." *Id.* The victim indicated she sent the photo to Appellant: "And I showed [Appellant] what he did to me. I said, 'This is jail time; stop talking to me.'" *Id.* The victim confirmed that Appellant responded by accusing her of causing her own injuries by stating, "You cause [*sic*] it and you know it[.]" *Id.* at 172.

Based on the foregoing we cannot conclude the photograph is so "gruesome it would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Funk*, 29 A.3d at 33. As the trial court explained at trial, the photograph was relevant to (a) the treating physician's testimony regarding the victim accepting blame for her own injuries; and (b) Appellant's two conflicting versions of the event presented to authorities. N.T., 8/12-15/24, at 105. Further, the trial court correctly determined that the photograph's

> probative value clearly outweighs what might otherwise be deemed inflammatory, and it is in a context of a series of texts that also make it significantly relevant to the dialog between the victim and [Appellant].

*Id.* at 105; *see* Pa.R.E. 403, *supra*. Keeping in mind that the Commonwealth must prove the elements of aggravated assault and REAP beyond a reasonable doubt, we discern no error or abuse of the trial court's discretion in admitting the photograph at trial. *See Fortune*, 302 A.3d at 783. Appellant's issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/06/2026

- 16 -